## PARAMOUNT TERMITE CONTROL CO., INC.

### V.

## THOMAS A. RECTOR, ET AL.

Record No. 870723

June 9, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas, and Whiting, JJ.,
and Poff, Senior Justice

*Charles W. Sickels (Hall, Markle & Sickels*, on briefs), for appellant.
*John F. Cahill (R. Mark Dare; Robert J. Cunningham, Jr.; Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C.*, on brief), for appellees.

Justice Whiting delivered the opinion of the Court.

In this appeal, we determine the validity of non-competition agreements in certain employment contracts.

For a number of years before 1982, Paramount Termite Control Co., Inc. (Paramount) was engaged in the pest control business in the Northern Virginia, Washington, D.C., and Maryland areas. In 1982, as a condition of their continued at-will employment, Paramount's employees Thomas A. Rector, Vernon L. Miller, Douglas N. Davis, Robert W. Lansing, and Ralph S. Moss signed non-competition agreements with Paramount.

The agreements are identical in pertinent part and provide that:

3. The Employee will not engage . . . in the carrying on or conducting the business of pest control, fumigating, and ter-

mite control . . . in any county or counties in the state in which Employee works in which the Employee was assigned during the two (2) years next preceding the termination of the Employment Agreement and for a period of two (2) years from and after the date upon which he shall cease for any reason whatsoever to be an employee of PARAMOUNT.

4. The Employee will not . . . solicit business from any customer of PARAMOUNT where the purpose thereof is to provide, or offering to provide, the services of pest control . . . in any county or counties in the state in which Employee works, in which the Employee was assigned at any time during the two (2) years next preceding the termination of the Employment Agreement and for a period of two (2) years from and after the date upon which he shall cease for any reason whatsoever to be an employee of PARAMOUNT. Further, the Employee will not . . . solicit business from any customer of PARAMOUNT where the purpose thereof is to provide, or offering to provide, the services of pest control . . . with which customer the Employee established contact while in the employ of PARAMOUNT at any time during the two (2) years next preceding the termination of the Employment Agreement and for a period of two (2) years from and after the date upon which he shall cease for any reason whatsoever to be an Employee of PARAMOUNT.

During the latter part of 1986 and early part of 1987, on dates not shown in the record, the five employees resigned their positions with Paramount and began working for Triple-S Termite and Pest Control, Inc. (Triple-S), one of Paramount's competitors in the Northern Virginia area. On February 9, 1987, Paramount filed this suit in equity against Triple-S and the former employees seeking an injunction against them, as well as damages for their breach of the non-competition agreements.

On April 15, 1987, the trial court denied a preliminary injunction to Paramount upon the ground that the restrictive covenants were "not reasonable, under the circumstances presented in the evidence and therefore [are] an unreasonable restraint of trade."

We granted Paramount this appeal against the former employees.[1]

We apply the following criteria to determine the validity of such non-competition agreements:

> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than is necessary to protect the employer in some legitimate business interest?
>
> (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?
>
> (3) Is the restraint reasonable from the standpoint of a sound public policy?
>
> Non-competition covenants which pass these tests in the light of the facts of each case will be enforced in equity.

*Roanoke Eng. Sales* v. *Rosenbaum*, 223 Va. 548, 552, 290 S.E.2d 882, 884 (1982) (citations omitted).

Although the parties agree as to the applicability of the foregoing principles, they disagree in their construction of the covenants in question. The former employees argue that the covenants extend throughout any state in which the former employee worked for Paramount. On the other hand, Paramount says they extend only to those *counties* of a state in which the former employee worked.[2]

■ Basic rules of construction govern our consideration of the disputed language in a contract. We read the language used so as to give meaning to all the words; otherwise stated, we do not regard any language as meaningless, unless compelled to do so. *Berry* v. *Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983); *Hughes & Co.* v. *Robinson Corp.*, 211 Va. 4, 6-7, 175 S.E.2d 413, 415 (1970). If the language is unambiguous and capable of only one reasonable construction, we read it according to its plain meaning. *Blue Cross* v. *McDevitt & Street*, 234 Va. 191, 195, 360 S.E.2d 825, 827 (1987).

---

[1] Paramount failed properly to perfect its appeal against Triple-S.

[2] The former employees contend that Paramount cannot argue for its construction because its counsel tendered a proposed decree for a temporary injunction which adopted their construction. Counsel's construction of an unambiguous contract in a proposed decree binds neither the parties nor the court. *See Tuggle* v. *Commonwealth*, 230 Va. 99, 111 n.5, 334 S.E.2d 838, 846 n.5 (1985), *cert. denied*, 478 U.S. 1010 (1986).

█ In our opinion, the language of these agreements clearly and unambiguously prohibits the former employees from engaging in the pest control business in any of the counties in which they were assigned by Paramount during the prescribed period. It does not prohibit such activities in any other counties. So limited, we find that the area is not geographically overbroad, as claimed by the former employees.

█ We also conclude that the restraint is reasonable in that it is no greater than reasonably necessary to protect Paramount's legitimate business interest in the counties in which the employees worked for Paramount in the two years preceding their terminations of employment. Rector and Miller, as sales representatives, Lansing, as a service coordinator, and Davis, as a service technician, had frequent contacts with Paramount's customers. These four men and Moss, as an insect inspector, were familiar with Paramount's methods of estimating the cost of its work, its specifications for doing the work, and its techniques of pest control.

█ Although often used as a justification for non-competition agreements, it is not necessary that "the employees actually had acquired or possessed specific information that could be legally defined as confidential or a trade secret," as contended by them. In *Stoneman v. Wilson*, 169 Va. 239, 246, 192 S.E. 816, 819 (1937), we indicated that non-competition agreements are also justified where the employee comes into personal contact with his employer's customers. In our opinion, the customer contacts of four of the former employees, and the knowledge of all five as to Paramount's methods of operation, sufficiently demonstrate the need for these agreements.

█ We also find that the restraint does not unreasonably curtail the employees' legitimate efforts to earn a livelihood. Although for two years after their termination of employment the employees may not perform pest control work in counties in close proximity to where they live, they are not prohibited from such work in a number of areas within commuting distance. Moreover, they may engage in any other work but that of pest control in the counties in which they formerly worked for Paramount.

█ Neither do we find that the restrictions unreasonably restrain trade or violate public policy, as claimed by the former employees. Both sides recognize that the pest control business is highly competitive, with a limited supply of customers, and an

ample supply of businesses and personnel willing to supply such services.

The employees assign two additional reasons why their non-competition agreements should not be enforced. We find no merit in either.

■ First, they contend that Paramount breached the employment agreements. In their brief, they say that in "response to unilateral changes in employment terms, salary, and responsibility, [they] resigned from Paramount." We find nothing in the record to support any of these claims except testimony that Rector and Miller had been demoted as vice presidents and made salesmen, but neither suffered a reduction in compensation. The employees point to no contractual obligation upon Paramount to continue any of them in their particular positions, or, for that matter, to any obligation on Paramount's part to maintain fixed salaries.

■ Second, the former employees argue that there was no consideration for their covenants not to compete because they were already employed when they signed the agreements. We have held that employees who continue their at-will employment after their employers offer severance pay, supply the necessary consideration for such promises by continuing their employment after the promises were made. *Dulany Foods* v. *Ayers*, 220 Va. 502, 510-11, 260 S.E.2d 196, 201-02 (1979); *Hercules Powder Co.* v. *Brookfield*, 189 Va. 531, 541-42, 53 S.E.2d 804, 808-09 (1949). That principle applies here. Even though Paramount could have terminated the employees at its will after they signed the non-competition agreements, Paramount continued to employ them and to give them access to valuable information. This supplied the consideration for their promise not to compete.

■ Accordingly, we hold the agreements are valid. Even so, the employees argue that they may no longer be enforced because more than two years have elapsed since the termination of the former employees' employment. The employees contend that the matter is now moot and cite a similar situation in *Hallmark* v. *Jones*, 207 Va. 968, 970-71, 154 S.E.2d 5, 6-7 (1967). In *Hallmark*, the employer prayed for an injunction " 'for a period of eighteen (18) months from the date of the termination of [the defendant's] employment.' " *Id.* at 969, 154 S.E.2d at 6. In this case, however, Paramount prayed for an injunction without specifying its beginning and ending dates.

Although Paramount made no specific request for prospective enforcement after the appeal was granted, as the employer did in a similar situation in *Roanoke Eng. Sales*, 223 Va. at 553-56, 290 S.E.2d at 885-87, we do not consider the matter to be moot. Accordingly, upon remand, the trial court will consider Paramount's prayer for injunctive and other relief. If temporary or permanent injunctions issue, they will extend for a total of two years.

For all of the foregoing reasons, we will reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

*Reversed and remanded.*