# CIRCUIT COURT OF THE CITY OF NORFOLK

K & K of Va., L.L.C.

v.

James Brinkley
and Tanita Brinkley

April 15, 2013

Case No. (Civil) CL13-1424

BY JUDGE JUNIUS P. FULTON, III

The Court has considered the plaintiff's brief in support and the defendant's brief in opposition in consideration of the plaintiff's request for injunctive relief.

Although there are no Virginia Supreme Court cases on point, the United States Supreme Court has articulated what factors must be shown to establish the plaintiff's equity and allow the granting of a temporary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008).

## A. Likely To Succeed on the Merits

A non-compete agreement is enforceable if it "is narrowly drawn to protect the employer's legitimate business interest, is not unduly burdensome on the employee's ability to earn a living, and is not against public policy." *Home Paramount Pest Control Co. v. Shaffer*, 282 Va. 412, 415, 718 S.E.2d 762, 763-64 (2011) (citing *Omniplex World Servs. Corp. v. US Investigations Servs., Inc.*, 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005)). The employer carries the burden of proof on each of the factors. *Modern Env'ts, Inc. v. Stinnett*, 263 Va. 491, 493, 561 S.E.2d 694, 695 (2002). In determining whether an employer meets their burden, the "function, geographic scope, and duration" restrictions in the non-compete agreement are "considered

together" instead of "as three separate and distinct issues." *Simmons v. Miller*, 261 Va. 561, 581, 544 S.E.2d 666, 678 (2001).

When assessing the function element of non-compete clauses, the court determines "whether the prohibited activity is of the same type as that actually engaged in by the former employer." *Home Paramount*, 282 Va. at 416, 718 S.E.2d at 764.

In this case, the non-compete clause states:

> James agrees and covenants that for a period of three years following the termination of this Agreement, whether such termination is voluntary or involuntary, James will not directly or indirectly engage in any business competitive with Head Start. This covenant shall apply to the geographical area that includes all of the State of Virginia.

Pl.'s Exh. 1. An identical non-compete provision is contained in the employment contract signed by Tanita. Pl.'s Exh. 2. The subcontractor agreement between Head Start and Brinkley Financial does not contain a non-compete agreement. Pl.'s Exh. 3. The employment agreements signed by both Tanita and James Brinkley state that they are employed by Head Start as tax professionals. Pl.'s Exh. 1 & 2.

However, the non-compete clause prohibits the Brinkleys from working in any capacity with any business competitive with Head Start. A valid non-compete provision would only prohibit "an employee from engaging in activities that actually or potentially compete with the employee's former employer." *Id.* (citing *Omniplex World Servs. Corp. v. US Investigations Servs., Inc.*, 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005)). "When a former employer seeks to prohibit its former employees from working for its competitors in any capacity, it must prove a legitimate business interest for doing so." *Home Paramount*, 282 Va. at 417-18, 718 S.E.2d at 765.

In this case, the Plaintiff has not offered a legitimate business interest why the Defendants cannot act as passive shareholders in another accounting business or work for another accounting business in even an indirect way. Therefore, the function of the non-compete is overly broad, and the Plaintiff is not likely to succeed on the merits.

### B. Likely To Suffer Irreparable Harm

Second, the Plaintiff has not provided enough evidence that it is likely to suffer irreparable harm. In *SmartMail Servs., L.L.C. v. Ellis*, 66 Va. Cir. 507, 510 (2003), the Circuit Court of Chesterfield County held that without "direct evidence of a link establishing [the Defendant] actively lured *SmartMail* clients away from the company, or that [the Defendant] is divulging privileged information, granting a temporary injunction enjoining

[the Defendant] from working for [a competitor] would not necessarily prevent harm to *SmartMail*."

In this case, the Plaintiff admits that his "numbers are down, but I don't know. I don't know if it's direct from them." (Tr. 19, ln. 1-10.) In the closing brief, the Plaintiff also acknowledges that it cannot determine how its revenue has been affected or how many of Brinkley Financial's clients used to be clients of Head Start. Similar to *SmartMail*, there is no allegation that either of the Defendants stole a client list or intentionally took clients from Head Start. The Defendants have not provided a single shred of evidence that the Defendants are causing harm to the Plaintiff; therefore, the Plaintiff has not established that it is likely to suffer irreparable harm.

## C. Balance of Equities Tip in Favor

Third, the balance of equities does not tip in the Plaintiff's favor. In *SmartMail*, the court found that a defendant would be significantly harmed by a temporary injunction where the defendant would be unable to work for a competitor in any capacity where he would have potential contact with the plaintiff's clients. 66 Va. Cir. at 510.

In this case, the Defendants are even more restricted than in *SmartMail* because they are unable to work for a competitor in any capacity even as a passive shareholder. Both of the Defendants live and work in the Commonwealth of Virginia; thus, if the temporary injunction was granted they would be forced to move out of the state or change professions. In addition, both of the Defendants have been working in the accounting field for their entire professional careers. When comparing the significant harm that will fall on the Defendants if the temporary injunction is granted with the harm that may or may not be occurring to the Plaintiff, it is clear that the balance of equities does not tip in the Plaintiff's favor.

## Conclusion

In conclusions, for the reasons stated herein, the plaintiff's motion for preliminary K & K of Va., L.L.C. v. James and Tanita Brinkley injunction will be denied and exception noted.